IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES MOORE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 15-2519 |
| | : | |
| v. | : | |
| | : | |
| ELPIZO, R.I., L.P., et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Presently before the Court is a Motion for Summary Judgment filed by Defendants Elpizo, L.P., Ipax, R.I., Inc., and Phileo R.I., Inc. ("Defendants") (Doc. No. 44), and Plaintiff Charles Moore's ("Moore" or "Plaintiff") response in opposition (Doc. No. 47). Moore filed this action to recover damages as a result of an alleged slip and fall on an icy staircase at a hotel property owned, operated, and managed by the Defendants.[1] Moore asserts claims against the Defendants for negligence and/or carelessness for their alleged failure to clear ice from the outdoor staircase of the building where Moore fell. For the reasons that follow, this Court will deny Defendants' Motion.

---

[1] This action was originally filed in the Court of Common Pleas of Philadelphia County, Pennsylvania. The action was removed to the United States District Court for the Eastern District of Pennsylvania, where it was referred to arbitration. Doc. Nos. 1, 17. Moore appealed the Award of Arbitrators and requested a trial de novo. Doc. No. 30. Upon consent of the parties and by order of the Honorable Juan R. Sanchez, the case was referred to the undersigned to conduct all further proceedings including trial, the entry of final judgment, and all post-trial proceedings. Doc. No. 38.

**I.       STATEMENT OF FACTS**[2]

Defendants are the owners and managers of a hotel property comprised of 16 separate buildings located at 7890 Penrose Avenue in Philadelphia, Pennsylvania, near the Philadelphia International Airport. Defs.' Statement of Undisputed Facts Supp. Summ. J. (Doc. No. 44), ¶ 1 [hereinafter "Defs.' Facts"]. The hotel operated under a licensing agreement with Hawthorn Suites Franchising, Inc.[3] Id. On January 4, 2014, the date of the accident, Moore was employed as a security officer by Executive Shields, the hotel's third-party security vendor. Id. ¶ 9. Moore's job duties as a security officer consisted of touring the complex in order to report any hazardous conditions, including weather-related hazards and potential misconduct by hotel tenants. Pl.'s Counter-Statement of Disputed and Undisputed Facts (Doc. No. 47), ¶¶ 39-43 [hereinafter "Pl.'s Facts"]; Defs.' Facts Ex. M (Doc. No. 44-13), at 9:7-9:20, 44:8-44:11.

Prior to the fall, from Thursday, January 2, 2014, at approximately 5:00 p.m. through Friday, January 3, 2014, at approximately 11:00 a.m., it snowed nine inches in the Philadelphia area. Defs.' Facts Ex. I (Doc. No. 44-9); Pl.'s Ex. D. Moore worked the overnight shift at the hotel property from approximately 10:30 p.m. on Friday, January 3, 2014 through 7:00 a.m. on Saturday, January 4, 2014. Defs.' Facts ¶ 47; Pl.'s Facts ¶ 28. During this shift, Moore patrolled the hotel property six times. Defs.' Facts Ex. K (Doc. No. 44-11). After his last tour at approximately 6:50 a.m. on January 4, 2014, he noted in his work log that "[d]uring the co[u]rse

---

[2] The statement of facts is derived from the competing factual statements set forth by the parties in their submissions. In accordance with the standard of review on motions for summary judgment discussed infra in Section II.A, the Court views the facts in the light most favorable to Moore and draws all reasonable inferences in Moore's favor. See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006).

[3] Hawthorn Suites Franchising, Inc. was named as a defendant, but was dismissed from the case via stipulation on June 27, 2016. Doc. No. 27.

of my tour I notice[d] that all of the building steps are icy in patches" and he advised the general manager of the hotel of this issue. Id.; Defs.' Facts ¶ 28. At that time, he also submitted a maintenance request form where he wrote that "all steps on each building[] need to be salted and becoming slippery." Pl.'s Facts ¶¶ 19-20; Defs.' Facts Ex. G (Doc. No. 44-7). The hotel property had an on-site engineering team that was responsible for the maintenance of the buildings and addressing any issues noted by the security team, including snow and ice removal. Defs.' Facts ¶¶ 29, 31; Defs.' Facts Ex. J (Doc. No. 44-10), at 20:13-21:16; Pl.'s Facts ¶¶ 19-20.

Moore completed his shift at approximately 7:00 a.m. on January 4, 2014 and returned to work the overnight shift at approximately 11:00 p.m. that night. Pl.'s Facts ¶ 24. During his first patrol of the property that evening, Moore thought he smelled marijuana emanating from the second floor of Building #7. Defs.' Facts ¶ 15. As he was walking to the outdoor stairway of Building #7, he saw patches of ice in the vicinity of the building which he was able to navigate around. Id. ¶ 13. He did not see any ice on the steps of Building #7 before he walked up the stairs to investigate the source of the smell. Id. ¶ 18. Moore walked approximately halfway up the staircase when he determined that the smell was not coming from the second floor of the building. Id. ¶ 15. When he turned to go down the stairs, he slipped and fell as a result of ice on the stairway. Id. ¶ 11. After he fell, he called for his supervisor, another security officer working at the hotel property that night, to come help him because he was having difficulty walking. Id. ¶ 17. After Moore received medical assistance, the supervisor completed an Incident Report, in which he stated that the stairs at Building #7 were covered with water and thin ice. Id.; Pl.'s Facts ¶ 22.

## II. DISCUSSION

### A. Legal Standard

"A federal court sitting in diversity must apply state substantive law and federal procedural law." Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Williams v. Wells Fargo Bank, No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012)).

> [T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"By its very terms, this standard [that there be no genuine issue as to any material fact] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is one that "might affect the outcome of the

suit under the governing law." Id. at 248.

When ruling on a motion for summary judgment, the court shall consider facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006). To prevail on summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-moving party].'" Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (quoting Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)); see also Anderson, 477 U.S. at 252. As this case is in federal court on diversity jurisdiction, we will apply Pennsylvania law to this dispute. Erie R.R. Co., 304 U.S. at 78; Sheridan v. NGK Metals Corp., 609 F.3d 239, 253 (3d Cir. 2010).

### B. Defendants Are Not Entitled to Summary Judgment on Moore's Negligence Claims

Defendants argue that they are entitled to summary judgment based on three legal theories that may act to absolve them of liability under Pennsylvania law. First, Defendants contend that, pursuant to the assumption of risk doctrine, they lacked any duty to Moore because Moore was aware of the risks of traversing the icy steps, but nevertheless did so. Defs.' Mem. Supp. Summ. J. at 17-22 [hereinafter "Defs.' Mem."]. Second, Defendants assert that their liability is negated by Pennsylvania's "hills and ridges doctrine" because Moore cannot show than an unreasonable accumulation of snow or ice was in the area at the time of the incident. Id. at 23-25. Third, they argue that Moore's own negligence was the primary cause of his fall. Id. at 25-29. Because genuine issues of material fact remain in dispute, summary judgment is inappropriate on any of these grounds.

### 1. There Are Disputes of Material Fact Regarding Whether Moore Assumed the Risk of Descending the Staircase

Defendants argue that Moore is barred from recovery because he assumed the risk of injury given his awareness of slippery conditions on the hotel property and in the vicinity of Building #7. Defs.' Mem. at 17-22. In a negligence case, the plaintiff must prove that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage. See Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998). In Pennsylvania, possessors of land owe a duty to invitees to protect them from foreseeable harm. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts, which subjects a possessor of land to liability for conditions on the land which are known to or discoverable by the possessor only if he or she:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee;
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Id. (citing Restatement (Second) of Torts § 343).

Under Pennsylvania's assumption of risk doctrine, however, a defendant owes no duty if the plaintiff "'discover[ed] dangerous conditions which [were] both obvious and avoidable, and nevertheless proceed[ed] voluntarily to encounter them.'" Kaplan v. Exxon Corp., 126 F.3d 221, 226 (3d Cir. 1997) (quoting Carrender, 469 A.2d at 125). Accordingly, "assumption of risk is established as a matter of law 'only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition.'" Staub v. Toy Factory, Inc., 749 A.2d 522, 529 (Pa. Super. Ct. 2000) (quoting Barrett v. Fredavid Builders, Inc., 685 A.2d 129, 131 (Pa. Super. Ct. 1996)). "Mere contributory negligence does not establish

assumption of the risk." Id. at 529.

Viewing the evidence in the light most favorable to Moore as the non-moving party, disputes of material fact exist over whether Moore knew of the icy conditions on the stairs of Building #7, but nevertheless proceeded to use them. The record establishes that during his overnight shift the evening before his fall, Moore toured the property six times. Defs.' Facts Ex. K. On his last tour, at approximately 6:50 a.m. on January 4, 2014, he made a note in the log that, "[d]uring the co[u]rse of my tour I notice[d] that all of the building steps are icy in patches." Id. He also submitted a maintenance request to the hotel property's engineering department that each buildings' steps needed to be salted because they were becoming slippery. Pl.'s Facts ¶¶ 19-20; Defs.' Facts Ex. G. The engineering department was responsible for the snow and ice removal on the property. Defs.' Facts ¶¶ 29, 31; Pl.'s Facts ¶¶ 19-20. Moore reported back to work later that night, approximately 15 ½ hours after he submitted his maintenance request. Defs.' Facts ¶ 47; Pl.'s Facts ¶¶ 19-20. At the start of his shift, Moore began his first tour of the property. During his tour, he smelled what he thought was marijuana coming from the second floor of Building #7. Defs.' Facts ¶ 15. As he approached the steps of Building #7 to determine the origin of the smell, he noticed patches of ice in the area, but was able to avoid them to access the steps. Id. ¶ 13. He then proceeded to ascend the steps until, about halfway up, he realized that the smell was not coming from the second floor of the building. Id. ¶¶ 14-15. Therefore, he began to descend the steps. Id. However, as he was walking down, he slipped on ice, leading to his fall and injury. Id. ¶ 11. According to his sworn testimony, it was not until after he fell that Moore became aware of the icy conditions on the stairs. Id. ¶ 18; Pl.'s Facts ¶¶ 49, 56.

Defendants contend that Moore's knowledge of the icy patches in the vicinity prove the existence of an obvious danger. This is an issue for the fact finder. Moore testified that he did

not see ice on the steps. Defs.' Facts Ex. F (Doc. No. 44-6), at 62:4-62:9. He had reported icy conditions on the property approximately 16 hours earlier to the general manager and the engineering department responsible for snow and ice removal. Defs.' Facts ¶¶ 19-21; Pl.'s Facts ¶ 48; Defs.' Facts Ex. K. Although Defendants claim that the general manager of the hotel property instructed Moore not to tour any areas that were potentially icy, that instruction came on the evening of Friday, January 3, 2014 before Moore submitted a request to the engineering department to address the accumulation of ice on the steps of the buildings. Pl.'s Facts ¶ 55; Defs.' Facts Ex. M, at 40:22-41:12. Reasonable minds could conclude that the engineering department responsible for salting the property would have addressed the slippery conditions identified in Moore's maintenance request submitted early that morning at some point during the course of the day and that the steps could be safely navigated later that night. In light of these disputes of material fact, summary judgment is not warranted as to whether Moore assumed the risk of descending the icy staircase.

## 2. Genuine Issues of Material Fact Preclude the Application of Pennsylvania's Hills and Ridges Doctrine

Defendants also argue that Moore failed to provide evidence that any snow or ice had accumulated in the requisite ridges or elevations and that, consequently, Moore is barred from recovery under Pennsylvania's "hills and ridges doctrine." Defs.' Mem. at 23-25. Under Pennsylvania law, property owners do not have an absolute duty to keep their premises completely free from snow and ice at all times. Rinaldi v. Levine, 176 A.2d 623, 625 (Pa. 1962). "There is no liability created by a general slippery condition on sidewalks." Id. The doctrine of hills and ridges provides:

> that an owner or occupier of land is not liable for general slippery conditions, for to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere. Snow and ice upon a pavement create merely transient danger, and the only duty upon the

> property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

Harmotta v. Bender, 601 A.2d 837, 841 (Pa. Super. Ct. 1992) (quoting Gilligan v. Villanova Univ., 584 A.2d 1005, 1007 (Pa. Super. Ct. 1991)). Thus, where the hills and ridges doctrine is applicable, an injured party must prove the following factual elements: (1) that the snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. Rinaldi, 176 A.2d at 625-26. "Proof of 'hills and ridges' is necessary, however, only when it appears that the accident occurred at a time when general slippery conditions prevailed in the community." Tonik v. Apex Garages, Inc., 275 A.2d 296, 298 (Pa. 1971). Thus, a prerequisite to the application of the "hills and ridges" doctrine is a finding of generally slippery conditions, as opposed to isolated icy patches. Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1088 (Pa. Super. Ct. 1997).

In this matter, it is not clear that generally slippery conditions existed throughout the community at the time of the accident. Specifically, 36 hours passed between the last significant precipitation in the area and Moore's fall. Defs.' Facts Ex. I; Pl.'s Ex. D. According to the precipitation tables attached as exhibits to the Defendants' Motion for Summary Judgment and Moore's Counter-Statement of Disputed and Undisputed Facts, it snowed approximately nine inches in the Philadelphia area beginning at approximately 5:00 p.m. on January 2, 2014 and ending at approximately 11:00 a.m. on January 3, 2014. Defs.' Facts Ex. I; Pl.'s Ex. D. Moore fell at approximately 11:55 p.m. on the night of January 4, 2014, a day and a half after any recorded precipitation. Defs.' Facts ¶ 22; Pl.'s Ex. D. Moore also testified that, when he was

walking to Building #7, there were "patches" of ice in the vicinity of the building, but they did not impede his ability to get to the steps. Defs.' Facts Ex. F, at 80:13-81:8. Viewed in the light most favorable to Moore, a reasonable juror could conclude that, at the time of Moore's injury, generally slippery conditions did not prevail in the community. See, e.g., Mangual v. DIA-Wesley Drive, Inc., No. 1:13-CV-00071, 2014 WL 2511281, at *6 (M.D. Pa. June 4, 2014) (determining that it was not clear that generally slippery conditions existed when photographs from the night of the incident showed "patches of pavement [that were] clearly visible along with patches of ice and snow, which [the plaintiff] testified that he likewise observed," and there was no snow in the area for three days prior to the alleged incident); Jung v. Marriott Hotel Servs., Inc., No. 09-4955, 2010 WL 4703543, at *3-4 (E.D. Pa. Nov. 19, 2010) (holding that there was a material issue of fact as to whether conditions were generally slippery at the time of plaintiff's fall or whether plaintiff slipped on a discrete patch of ice); Comer v. Boro Developers, Inc., No. 09-00415, 2010 WL 1948328, at *3-4 (E.D. Pa. May 14, 2010) (genuine issue of material fact existed as to whether generalized slippery conditions prevailed in the community at the time of plaintiff's alleged injury when previous precipitation occurred two days prior to plaintiff's fall and where testimony reflected that parking lot had been plowed and could be walked on without any problem); Mears v. Saidi, Nos. 2761 EDA 2011, 2762 EDA 2011, 2013 WL 11273038, at *10-11 (Pa. Super. Ct. Mar. 13, 2013) (no generally slippery conditions existed where the last snow or rain fall was approximately four days earlier and the general vicinity was free and clear of snow and ice); cf. Morin, 704 A.2d at 1088 (generally slippery conditions found to exist in the community where freezing precipitation began the night before and continued into the morning hours prior to the fall; numerous news accounts reported that driving was treacherous as a result of the freezing precipitation that had blanketed the entire area; and plaintiff admitted that after she

had fallen she realized the entire parking lot was covered with a thin glaze of ice); Moon v. Dauphin Cnty., 129 A.3d 16, 23 (Pa. Commw. Ct. 2015) (generally slippery conditions found to exist when fall occurred at the start of a weather event).

Moreover, a reasonable juror could also conclude that the slippery conditions on the stairs of Building #7 were not caused by the snowfall that ended the day before Moore's fall, but by Defendants' failure to clear the ice after the snowfall ended. A genuine issue of material fact exists regarding whether and to what extent the stairs at Building #7 were salted by the engineering department. Although the general manager testified that the engineering department salted the property on January 4, 2014, Defs.' Facts ¶ 30, Moore testified that the steps of Building #7 did not appear to be salted, despite the maintenance request he submitted at the end of his previous shift that "all steps on each building need to be salted and becoming slippery," Pl.'s Facts ¶ 30; Defs.' Facts Ex. G. If grounds are not properly maintained for an unreasonable period of time, the hills and ridges doctrine does not apply. See Lewis v. First Montgomery Grp., No. 08-2197, 2010 WL 3210419, at *4 (D.N.J. Aug. 11, 2010); see also Goggans v. United States, No. 87-7423, 1990 WL 18873, at *1-2 (E.D. Pa. Feb. 26, 1990) (holding that 15 hours was sufficient time to clear the snow, thus preventing the application of the "hills and ridges" doctrine). The ambiguity in the record evidence as to the extent to which the Defendants allowed any icy conditions to remain for an unreasonable length of time raises a genuine question of material fact which precludes the Court from answering the threshold issue of whether the hills and ridges doctrine applies. Accordingly, summary judgment must be denied on these grounds.[4]

---

[4] Moore also argues that the hills and ridges doctrine does not apply to stairs. Pl.'s Mem. Opp. Summ. J. (Doc. No. 47-1), at 4-5. The Pennsylvania Supreme Court has not addressed whether the hills and ridges doctrine applies to an open staircase like the one at issue here, or is strictly

(Footnote continued)

### 3. Defendants Are Not Entitled to Summary Judgment Based on Moore's Alleged Comparative Negligence

Defendants argue that Moore's own negligence was the primary cause of the fall because he disregarded company policy by patrolling unoccupied buildings, without his partner, in freezing temperatures. Under Pennsylvania's comparative negligence statute, a plaintiff's negligence bars recovery only when it is greater than that of the defendant. 42 Pa. Cons. Stat. Ann. § 7102(a); see Bouchard v. CSX Transp., Inc., 196 F. App'x 65, 70 (3d Cir. 2006). "Comparative negligence is ordinarily an issue for the jury; it is a 'rare situation where it can be said that the plaintiff is more than 50% negligent as a matter of law.'" Bouchard, 196 F. App'x at 70 (quoting Gilbert v. Consol. Rail Corp., 623 A.2d 873, 876 (Pa. Commw. Ct. 1993)).

The existence of the alleged policies identified by the Defendants and their enforcement, however, are in dispute. Defendants claim that, by patrolling the property alone, Moore was in violation of a policy that required security officers to tour the property in pairs on weekends. Defs.' Mem. at 26-29. Viewing the evidence in the light most favorable to Moore, the policy for security officers to tour the property in pairs on weekends was neither mandatory nor consistently followed, Pl.'s Facts ¶¶ 32-33, 57; Defs.' Facts Ex. F, at 73:13-74:6, and security officers regularly went out on their own to deliver items such as menus to guests, Pl.'s Facts ¶¶ 16, 32-33, 51-52. To the extent the policy existed, it was designed to protect security officers on the weekends when potential criminal activity such as prostitution was more likely to occur. Defs.' Facts Ex. J, at 26:6-26:15; Defs.' Facts Ex. M, at 13:10-14:2. The hotel property, however, was at

---

limited to sidewalks and paved areas. But see Blodnikar v. Elk Mountain Ski Ctr., Inc., No. 2004 – 359 C.P., 2005 WL 5006282 (Pa. Ct. Com. Pl. Susquehanna Cnty. Apr. 28, 2005) (holding that hills and ridges doctrine was applicable to stairs covered by a roof). Because summary judgment is not appropriate under the hills and ridges doctrine for the reasons explained above, the Court need not decide whether the doctrine applies to the open staircase where Moore fell for purposes of ruling on Defendants' Motion for Summary Judgment.

low occupancy on the night of January 4, 2014. Defs.' Facts Ex. J, at 41:20-42:6. Defendants also claim Moore violated a policy that any unoccupied buildings on the property did not need to be toured. Defs.' Mem. at 26-27. Moore's supervisor on the night of the accident, however, testified that he was unaware of this policy and that security officers would not even be made aware of which buildings were unoccupied until they had to deliver the guest checks. Pl.'s Facts ¶¶ 24, 34-36. Nor was Moore given a guest log for the evening of January 4, 2014. Id. ¶ 38. The hotel's general manager testified that this policy was only put into place that weekend. Defs.' Facts Ex. J, at 39:15-39:19. Defendants further contend that Moore was in violation of instructions from the owner of Executive Shields that security officers did not have to tour the property in inclement weather, including freezing temperatures. Defs.' Mem. at 27-28. On the evening of January 3, 2014, however, the weather report indicates that the temperatures were below freezing, yet Moore completed six tours of the property over the course of his overnight shift without any reported incident or reprimand. See Defs.' Facts Exs. I, K; Pl.'s Ex. D. No one prohibited Moore from touring the property on January 4, 2014 or instructed him not to go out that evening to complete his responsibilities of touring the property. Pl.'s Facts ¶¶ 16, 34-36; Defs.' Facts Ex. M, at 44:8-44:11. Accordingly, genuine issues of material fact remain regarding the existence and enforcement of each of these polices that Defendants claim Moore violated by patrolling the property during his shift on the night of January 4, 2014.

Even if Moore was found to be negligent for walking on the stairway of Building #7, summary judgment would still not be appropriate. Pennsylvania's comparative negligence statute provides that a plaintiff's own negligence shall not bar recovery, but that "any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff" so long as the plaintiff's negligence was not greater than that of the defendant. 42 Pa.

Cons. Stat. Ann. § 7102(a).  Apportionment of fault is generally within the jury's province, and should not be analyzed by the court except in certain circumstances where "the facts so clearly reveal the plaintiff's negligence that reasonable minds could not disagree as to its existence." O'Brien v. Martin, 638 A.2d 247, 249 (Pa. Super. Ct. 1994).  Here, upon a potential finding of negligence on the part of the Defendants, it would be most appropriate for the finder of fact to weigh any negligence on the part of Moore.  The facts before the Court do not compel a finding that Moore was so negligent as to bar recovery, and reasonable minds could certainly disagree as to the magnitude of Moore's comparative negligence, if any.  Therefore, while the potential for comparative negligence does not entitle Defendants to summary judgment, it may be considered by the jury at trial to bar or mitigate any recovery by Moore.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Summary Judgment.  A separate Order follows.

Date: March 7, 2017                                          BY THE COURT:


*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE